UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AUX SABLE LIQUID PRODUCTS LP, a Delaware Limited Partnership, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 06 C 1227 |
| KENNETH MURPHY, individually and as Monee Township Highway Commissioner, MONEE TOWNSHIP HIGHWAY DEPARTMENT, and MONEE HIGHWAY, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the parties' cross-motions for summary judgment. For the following reasons, summary judgment is granted in favor of Plaintiff Aux Sable Liquid Products LP ("Aux Sable") and denied as to Defendants Kenneth Murphy, Monee Township Road District, and Monee Township (collectively, "Monee").

## BACKGROUND

Aux Sable is the beneficial owner of a propane loading facility (the "Terminal") located at the intersection of Steger Road and Ridgeland Avenue in Monee Township, Illinois. The Terminal is fewer than five miles from the Manhattan-Monee Road

interchange with I-57, a federal interstate highway and a Class I Truck Route, and is located within zone I-3, an area of Will County zoned for industrial use. Trucks traveling to the Terminal are commercial motor vehicles as defined in 49 U.S.C. § 31114.

Steger Road and Ridgeland Avenue are the only two roads that abut the Terminal. Trucks are physically capable of entering and exiting the terminal solely on Steger Road. Trucks currently utilize an exit off of I-57 at Sauk Trail Road which is closer than the Manhattan-Monee Road exit, but this route requires the use of Steger Road in Cook County. Before construction of the Terminal was completed, Cook County advised Aux Sable that fully loaded trucks would not be permitted on Steger Road within Cook County's jurisdiction, because those roads were not locally designated roads. Since 2001, when the Terminal was constructed, loaded trucks from the Terminal have exited onto Ridgeland Avenue and traveled south and east to the Manhattan-Monee Road interchange with I-57.

The designation of the portion of Ridgeland Avenue within the jurisdiction of Monee Township is a central issue in this case and is hotly disputed. According to Aux Sable, on June 2, 2000, then-Monee Township Highway Commissioner Wayne Stassen signed a resolution permitting trucks whose gross weight did not exceed 80,000 pounds to use Ridgeland Avenue between Steger Road and Monee-Manhattan Road. Aux Sable claims that Stassen signed a similar resolution on January 30, 2004. Further,

Aux Sable points to a February 4, 2004, facsimile request for road signs pursuant to the January resolution, sent to the Will County Department of Highways by Stassen and approved by Bruce Gould, Assistant Will County Engineer. Monee disputes the validity of Stassen's signature and the effectiveness of the documents, because the resolutions were not certified or notarized, and because no copy of either resolution or the facsimile was found in the township records. There is dispute as well as to the condition of the Monee Township records, the sufficiency of the township's search, and Stassen's recordkeeping customs. Furthermore, there is dispute over the width of Ridgeland Avenue, and whether it is sufficiently wide to permit classification as a Class II highway.

After January 30, 2004, Stassen posted signs on Ridgeland Avenue between Steger Road and the Monee-Manhattan Road designating Ridgeland Avenue as a Class II truck route. In April 2005, Kenneth Murphy was elected Monee Township Highway Commissioner. In the fall of 2005, Murphy informed Aux Sable representatives that he planned on restricting truck traffic on Ridgeland Avenue because trucks were damaging the road. On February 22, 2006, Monee removed Class II truck signs from Ridgeland Avenue and replaced them with signs limiting truck weights to 14 tons. On March 1, 2006, Monee stopped the driver of a truck proceeding to the Terminal and informed the driver that trucks could no longer use Ridgeland Avenue to access the Terminal.

Shortly thereafter, Aux Sable obtained a temporary restraining order in the Circuit Court of Will County, Illinois. Aux Sable then filed a complaint and motion for a preliminary injunction, which Monee removed to this Court. On March 14, 2006, this Court granted Aux Sable's motion and enjoined Monee from stopping traffic along the truck route to/from Aux Sable's Terminal. At the close of discovery, the parties filed the instant cross-motions for summary judgment.

## **LEGAL STANDARD**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record, at which time the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In considering cross summary judgment motions, we "construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (internal citations omitted).

## **DISCUSSION**

Monee's current restrictions on truck traffic on Ridgeland Avenue implicates both the 1982 Surface Transportation Assistance Act ("STAA") as codified in part at 49 U.S.C. § 31114 and the Illinois Vehicle Code, 625 ILCS 5/15 *et seq*. These federal and state laws govern weight and size restrictions for vehicles traveling on certain classes of highways in Illinois. Against this statutory and regulatory background, we consider the current weight restriction imposed on the portions of Ridgeland Avenue in Monee Township by Kenneth Murphy, the current Monee Township Highway Commissioner. The parties' motions present three basic issues: (1) whether the current Monee weight restriction violates the Illinois Vehicle Code; (2) whether the current Monee weight restriction is preempted by the "reasonable access" provisions of the STAA; and (3) whether former Monee Township Highway Commissioner Stassen's actions entitle Aux Sable to claim equitable estoppel and require Monee Township to suspend its current weight restriction. Because we conclude that Monee's refusal to permit trucks weighing more than 14 tons to travel on Ridgeland Avenue violates the STAA, we need not consider whether or not the current Monee ordinance complies with the Illinois Vehicle Code or whether equitable estoppel applies.

The STAA establishes national standards for the type, size and weight of trucks used in interstate commerce. At issue in this case is § 31114(a) of the STAA, which provides that:

> "a State may not enact or enforce a law denying to a commercial motor vehicle...reasonable access between: (1) the Dwight D. Eisenhower System of Interstate and Defense Highways...and (2) terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers, motor carriers of passengers, or any truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that generally operates as part of a vehicle combination described in § 31111(c) of this title." 49 U.S.C. § 31114(a).

§ 31114(b) provides an exception for state and local regulation of truck tractor-semitrailer combinations, permitting "reasonable restrictions based upon safety considerations." Implementing regulations at 23 C.F.R. 658.19 reiterate the prohibitions contained in § 31114(a) and provide that "states shall ensure compliance with the requirements of this section for roads under the jurisdiction of local units of government." 24 C.F.R. 658.19(h).

Aux Sable argues that the current Monee ordinance is preempted by the STAA because it denies "reasonable access" to the Terminal for a non-safety related reason - the protection of the road. By prohibiting truck traffic on Ridgeland Avenue, Aux Sable argues, Monee has cut off the only available route for its fully loaded trucks to access I-57. The only other route from I-57 to the Terminal is via certain Cook County roads, and Cook County will not permit travel by trucks carrying loads in excess of 73,280 pounds on those roads. Because the Monee regulation conflicts with federal law, Aux Sable contends, it is void. Monee, on the other hand, argues that § 31114 does not pre-empt local regulation because by its plain language that section does

apply to local governments; instead, it provides only that "a state may not enact or enforce a law" denying reasonable access, and the implementing regulations provide only that "States shall ensure compliance" with § 31114 by units of local government. Congress' intent, according to Monee, was only to regulate state law, and its silence with respect to local regulation cannot establish a clear purpose to preempt local authority. Monee argues that as state law grants it the power to regulate truck traffic on a non-designated highway, Monee is in compliance with state law and cannot therefore violate the federal statute. Further, Monee argues, since Aux Sable does not contest the authority of Cook County to refuse to designate their roads, it is inconceivable that a similar refusal by Monee would violate federal law. Finally, Monee points out that its regulation does not conflict with federal law, as it does not deny reasonable access to the Terminal. Monee reasons that since trucks can both enter and exit the Terminal, without using Ridgeland Avenue, and by using the Sauk Trail exit from I-57 in Cook County rather than the Monee-Manhattan exit in Will County, its ordinance does not deny reasonable access.

The ability of federal law to preempt state or local law is derived from Supremacy Clause of Article IV of the Constitution, which provides that "the Laws of the United States...shall be the supreme Law of the Land...any Thing in the Constitution or Laws of any State notwithstanding." *Opthalmic Mut. Ins. Co. v. Musser*, 143 F.3d 482, 486-87 (7th Cir. 2005). Any preemption inquiry must begin

with an examination of Congressional intent in enacting the legislation at issue, because we cannot presume that federal law supersedes the state's historic police powers without evidence that preemption was the "clear and manifest purpose of Congress." *Id.* Preemption may be found in any of three circumstances: (1) express preemption, in which the express language of the legislation forecloses state action; (2)"field" preemption, in which the "depth and breadth" of the federal scheme "occupies the legislative field"; or (3) "conflict" preemption, in which the challenged law conflicts with federal law. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001).

There is no dispute that § 31114(a) expressly preempts state regulation that denies "reasonable access" to commercial vehicles from the federal interstates to points of loading and unloading. Relying on *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597 (1991), Monee contends that the failure to include any other political subdivision other than States means that Congress did not intend to preempt local regulation. In *Mortier,* the Supreme Court held that a provision of the Federal Insecticide, Fungicide, and Rodenticide Act authorizing a "State [to] regulate the sale or use of any federally registered pesticide or device in the State," did not invalidate local pesticide regulations, concluding that "mere silence cannot suffice to establish a clear and manifest purpose to pre-empt local authority." We need not decide whether

or not 31114(a) expressly preempts the Monee ordinance, however, because we conclude that conflict preemption exists.

An express preemption clause "does not bar the ordinary working of conflict preemption principles". *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002). Instead, conflict preemption exists whenever it is "impossible for a private party to comply with both state and federal requirements...or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (internal citations omitted). The determination of whether the state law is "a sufficient obstacle" is based upon an examination of the entire statute, its purpose, and its intended effects. *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373 (2000). Where "the purpose of the act cannot otherwise be accomplished-if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect-the state law must yield to the regulation of Congress within the sphere of its delegated power." *Id.* (citations omitted). In conducting this inquiry, a court may "consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written...the crucial inquiry is whether [state law] differs from [federal law] in such a way that achievement of the congressional objective...is frustrated." *Frank Bros., Inc. v. Wisconsin Dept. of Transp.*, 409 F.3d 880, 894 (7th Cir. 2005).

The STAA "reflects a congressional interest in establishing uniform regulations governing the size, weight, and arrangement of trucks used in interstate commerce." *United States v. Connecticut,* 566 F.Supp. 571 (D. Conn.) *aff'd mem.,* 742 F.2d 1443 (2d Cir. 1983), *aff'd mem.*, 465 U.S. 1014. The reasonable access provisions of § 31114(a) ensure that trucks used in interstate commerce are allowed reasonable access from federal interstate highways to points of loading, unloading, rest, food, and fuel. If each state or municipality were permitted to enact their own size and weight restrictions on all roads intersecting with federal interstates, the STAA's regulations would become meaningless.

Monee's current ordinance does not in and of itself deny reasonable access. Monee's ordinance, as applied, however, operates to deny reasonable access because it closes off Aux Sable's last available route to the Terminal. While Monee complains that its ordinance is no different from Cook County's ordinance, the basis for Cook County's ordinance restricting truck travel on those portions of Steger Road in its jurisdiction is not before this Court, and so this Court can only decide whether or not the Monee ordinance conflicts with the STAA.

To permit Monee's ordinance to stand would be to condone the start of a patchwork of local regulation which would ultimately defeat the purpose of the STAA - to ensure uniform access for commercial vehicles traveling on the national interstate system. *See id.* at 1536 (discussing the possibility that individual states' use

restrictions, regardless of the basis for those restrictions, would "invite a return to the patchwork of local restrictions" that prompted enactment of the STAA). As no evidence has been proffered that would establish that Monee enacted the current ordinance for any reason other than for the protection of the road, we need not consider whether or not a restriction on the basis of safety concerns would be permitted by § 31114(a) of the STAA. As there is no dispute that Aux Sable's trucks are commercial motor vehicles as defined in § 31114(a), by effectively denying Aux Sable's trucks any access to the Terminal within five miles of a federal interstate highway, Monee's current ordinance is in direct conflict with and therefore preempted by the STAA.

## CONCLUSION

For the foregoing reasons, Plaintiff Aux Sable's motion for summary judgment is granted, and Defendants Murphy, Monee Township Road District, and Monee Township's cross-motion for summary judgment is denied.

*[signature: Charles P. Kocoras]*

Charles P. Kocoras
United States District Judge

Dated: December 20, 2006